UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK RABOCZKAY,

    Plaintiff,

vs.

CITY OF TAYLOR, et al.

    Defendants.

_____/

Case No. 19-12144

HON. MARK A. GOLDSMITH

## OPINION & ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 12)

This case is a companion to another pending case in this Court, Raboczkay v. City of Taylor, Case No. 19-10255 ("Raboczkay I"). In Raboczkay I, Plaintiff Patrick Raboczkay, a retired City of Taylor police officer, brought claims against the City of Taylor and its officials alleging that they retaliated against him for comments he made about non-party J and M Towing. The alleged retaliation included public comments made in the media suggesting that Raboczkay had defrauded the City of Taylor. Although the present action is somewhat related to the prior action, Raboczkay's new claims arise from events that transpired subsequent to the events that occurred in Raboczkay I. In this case, Raboczkay brings claims against Defendants Rick Sollars (Mayor of Taylor), Sheila Gorski (Taylor Director of Human Resources), and the City of Taylor, alleging that they denied him a name-clearing hearing in violation of his due process rights and retaliated against him for filing Raboczkay I. The matters are fully briefed.[1] For the reasons discussed below, Defendants' motion is granted.

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

1

I.     BACKGROUND

The following allegations are taken as true for the purposes of the pending motion.

Raboczkay served as a City of Taylor police officer from 1997 through 2017. Am. Compl. ¶ 11 (Dkt. 10). He retired in October 2017. Id. ¶ 19. Shortly after his retirement, Raboczkay entered into a personal service contract with the City of Taylor and Defendant Sollars to serve as the "CMV Weigh Master/Motor Carrier Officer," performing salvage vehicle inspections on behalf of the City. Id. ¶¶ 13-20.

In March 2018, after normal working hours, then police chief John Blair approached Raboczkay and one of his colleagues to inquire about non-party J and M Towing's reputation. Id. ¶ 25. The City was considering making J and M Towing its exclusive towing service. Id. Raboczkay told Blair that J and M Towing was not trustworthy and had questionable drivers with criminal records. Id. ¶ 31.

Blair subsequently shared Raboczkay's opinion with the Taylor City Council, where Sollars was in attendance. Id. ¶ 32. After the city council meeting, one of the council members, non-party Herman Ramik, began sending false and defamatory letters to the Michigan Secretary of State requesting a criminal investigation into the City's salvage vehicle inspection program; Ramik also urged Sollars to initiate an investigation. Id. ¶ 35. According to Raboczkay, Ramik has a close relationship with J and M Towing and had been pressuring the City to award J and M Towing its exclusive towing contract. Id. ¶ 36. Raboczkay also alleges that Ramik falsely advised Sollars that Raboczkay and his colleague were "going to prison." Id. ¶ 38.

In April, the Michigan Secretary of State informed Raboczkay that, based on Ramik's complaint, the salvage vehicle inspection program was under investigation. Id. ¶ 39. Raboczkay's position was suspended pending the outcome of the investigation. Id. ¶ 40. In a statement to the

Detroit News, Ramik said that he blew the whistle on two former Taylor police officers, alleging that they had committed fraud by not turning over vehicle-salvage-inspection fees to the City. Id. ¶ 41; 4/12/2018 Detroit News Article, Ex. D to Resp. (Dkt. 14-4).[2] The article also quoted Sollars as stating that "concerns were raised that some questionable actions may have occurred" and that "while this investigation is ongoing, the two officers have been placed on administrative leave until further notice." 4/12/2018 Detroit News Article. A few days later, Ramik appeared on Fox 2 News and again falsely accused Raboczkay of fraud, theft, and embezzlement. Am. Compl. ¶ 45. On April 21, 2018, in the Sunday Times, Ramik again made statements related to Raboczkay engaging in fraud, theft, and embezzlement. Id. ¶ 48. Raboczkay was not named in the articles or in the Fox 2 News story ("News Items"), but Raboczkay alleges that shortly after the release of the News Items, Sollars and Gorski revealed to city employees and to the public that Raboczkay was one of the officers under investigation. Id. ¶¶ 43-44, 46-47.

In August 2018, Raboczkay was cleared of any criminal wrongdoing with respect to the vehicle salvage inspection program. Id. ¶ 51. Despite being cleared, Raboczkay was terminated. Id. ¶¶ 55, 99-101. Since his termination, Raboczkay has been unable to find law enforcement work. Id. ¶ 55. On more than one occasion, potential employers have said that the reason that

---

[2] Although Raboczkay refers to the Detroit News article in his Amended Complaint as Exhibit D, he did not attach the article to his pleading. However, the Sixth Circuit has recognized that if a plaintiff references or quotes material in the complaint, a court may still consider the documents without converting the defendant's motion to dismiss into one for summary judgment. In re Omnicare, Inc. Sec. Litig., 769 F.3d 455, 466 (6th Cir. 2014). "Fairness and efficiency require this practice." Id. "'Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure.'" Id. (quoting Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991)). Additionally, Raboczkay attached the Detroit News article to his response brief.

they will not hire Raboczkay is because of his termination by the City, and because of Sollars's comments in the press. Id. ¶ 56.

In an effort to refute the false charges against him, Raboczkay requested a name-clearing hearing. Id. ¶ 60. Raboczkay's counsel sent an email to Gorski seeking the hearing. Id. ¶ 61. A few days later, Defendants' attorney sent a reply email denying the request. Id. ¶ 62. Raboczkay does not allege on whose authority the hearing was denied. Id. After Raboczkay's request for a name-clearing hearing was denied, an unnamed individual informed Raboczkay that the reason his request was denied was because Defendants were upset by the allegations in Raboczkay I. Id. ¶ 74. Additionally, Raboczkay has learned that since filing his first lawsuit, Defendants have commissioned a private company to conduct another investigation into Raboczkay's alleged wrongdoing. Id. ¶ 76. Raboczkay alleges that Defendants' actions are in retaliation for his litigation against the City and its officers. Id. ¶¶ 79-83.

Raboczkay filed this action alleging violation of his Fourteenth Amendment protection of his reputation, First Amendment retaliation, and violation of the Fourteenth Amendment's Equal Protection Clause. Defendants filed a motion to dismiss (Dkt. 12) under Federal Rule of Civil Procedure 12(b)(6).

## II.   STANDARD OF REVIEW

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility

standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[S]pecific facts are not necessary . . . ."). Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote. Twombly, 550 U.S. at 556.

### III.    ANALYSIS

Defendants argue that Raboczkay has failed to state a claim for violation of his First and Fourteenth Amendment rights. In his response brief, Raboczkay agrees to dismiss his Equal Protection "class-of-one" claim. Resp. at 22 (Dkt. 14). The Fourteenth and First Amendment claims will be taken in turn.

#### A. Due Process Right to a Name-Clearing Hearing

Raboczkay alleges that Defendants have done harm to his reputation and good name and, therefore, he is entitled to a name-clearing hearing and money damages. A person has a protected liberty interest in their "reputation, good name, honor, and integrity." Chilingirian v. Boris, 882 F.2d 200, 205 (6th Cir. 1989). This interest includes "'being free to move about, live, and practice his profession without the burden of an unjustified label of infamy.'" Joelson v. United States, 86

F.3d 1413, 1420 (6th Cir. 1996) (quoting Stretten v. Wadsworth Veterans Hosp., 537 F.2d 361, 366 (9th Cir. 1976)). "'[W]hen a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude, the consequences are so nearly those of formally excluding him from his occupation that the law treats the state's action the same way, and insists that due process be provided.'" Lisle v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 73 F. App'x 782, 788 (6th Cir. 2003) (quoting Lawson v. Sheriff of Tippecanoe Cty., 725 F.2d 1136, 1138 (7th Cir. 1984)).

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). However, "liberty interests are not implicated . . . by allegations of improper or inadequate performance or, in some cases, by charges of incompetence, neglect of duty or malfeasance." Id. at 206. Nor is defamation alone enough to invoke due process concerns. Quinn v. Shirey, 293 F.3d 315, 319 (6th Cir. 2002). To demonstrate entitlement to a name-clearing hearing, the plaintiff must show the following five elements:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment . . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance . . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

Brown v. City of Niota, Tenn., 214 F.3d 718, 722-723 (6th Cir. 2000) (quoting Ludwig v. Bd. of Trustees of Ferris State Univ., 123 F.3d 404, 410 (6th Cir. 1997)). "Once a plaintiff has established the existence of all five elements, he is entitled to a name-clearing hearing if he requests one." Id.

6

Defendants argue that Raboczkay has not alleged the first element, primarily because Raboczkay was not named in the News Items, and that the News Items do not relate to termination. Defs. Mot. at 4-8. Raboczkay does very little to oppose Defendants' arguments. Raboczkay makes the following conclusory statement: "[T]he stigmatizing statements made by the Defendants were made in conjunction with the Plaintiff's termination for [sic] employment." Resp. at 16. Although Defendants' arguments are somewhat misdirected, they have the better part of the argument.

It is important to clarify which statements are at issue in this case. Statements by Sollars and Gorski, as defendants, are relevant. Statements by non-party Ramik, as discussed below, are not. Gorski did not make any statements in the News Items that Raboczkay alleges have harmed his reputation. And Sollars, as discussed extensively in Raboczkay I, merely reported that "concerns were raised that some questionable actions may have occurred" with respect to two officers in the City's salvage vehicle program, and that "'while th[e] investigation is ongoing, the two officers have been placed on administrative leave until further notice.'" 2019 WL 6254870, at *6 (quoting 4/12/2018 Detroit News Article). Additionally, Raboczkay alleges that Sollars and Gorski "publicly and privately disclosed to employees and residents of the Defendant City that Raboczkay was one of the police officers referenced" in the News Items. Am. Compl. ¶¶ 43-47.

Sollars's statement falls short of imposing a moral stigma on Raboczkay such that the liberty interest in his reputation has been harmed. Sollars's statement is nothing more than a neutral account of undisputed facts, and as such, can hardly be characterized as false. Similarly, Raboczkay was not burdened with an unjustified label of infamy when Sollars and Gorski disclosed to employees and residents of Taylor that Raboczkay was one of the police officers referenced in the news articles. Much like Sollars's statements in the articles, the statements are

neutral statements of undisputed fact, namely that Raboczkay was one of the officers referenced in the articles.

The allegedly stigmatizing statements were made by Ramik. However, Ramik is not a defendant in this action, and Raboczkay has not advanced any theory alleging that Sollars or Gorski adopted Ramik's statements in some fashion. Therefore, Ramik's statements cannot form the basis of a right to a name-clearing hearing in a case against Sollars and Gorski.

Raboczkay has failed to state a claim that he was entitled to and denied a name-clearing hearing, because Sollars's and Gorski's statements did not harm Raboczkay's good name, and Raboczkay cannot claim that Sollars's and Gorski's statements were false.

### B. First Amendment Retaliation

To survive a motion to dismiss a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of rights secured under federal law. Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998). Defendants do not dispute that Raboczkay alleged that Sollars and Gorski were acting under the color of state law. Defendants dispute whether Raboczkay has been deprived any right secured under federal law. Defendants have the better part of the argument.

To establish a First Amendment retaliation claim, the plaintiff must show "'(1) he was engaged in a constitutionally protected activity; (2) he was subjected to adverse action or deprived of some benefit; and (3) the protected speech was a 'substantial' or 'motivating factor' in the adverse action.'" Haddad v. Gregg, 910 F.3d 237, 243 (6th Cir. 2018) (quoting Farhat v. Jopke, 370 F.3d 580, 588 (6th Cir. 2004)). Defendants concede that Raboczkay has alleged a protected activity (filing a lawsuit), but they argue that Raboczkay has failed to allege the adverse action or causation elements of a First Amendment retaliation claim.

8

Raboczkay alleges two adverse actions: (i) denial of a name-clearing hearing, Am. Compl. ¶¶ 73-75, and (ii) a second investigation into his alleged misconduct, id. ¶¶ 66-84. Defendants argue that because Raboczkay is not entitled to a name-clearing hearing, the action of denying the hearing did not rise to the level of an adverse action. Defs. Mot. at 10. They further argue that an employer investigation is not an adverse employment action, and that Raboczkay has not alleged any harm resulting from the investigation. Reply at 2. Defendants are correct.

An action is adverse if it "would deter a person of ordinary firmness from continuing to engage in that conduct." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 723 (6th Cir. 2010) (citations omitted). "Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact." Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583-584 (6th Cir. 2012) (citing Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002)). The adverse action requirement "is intended to weed out only inconsequential actions," and is not intended to allow only the most egregious adverse actions to proceed to trial. Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999). Therefore, "if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage," Siggers-El v. Barlow, 412 F.3d 693, 701 (6th Cir. 2005) (citation omitted), let alone the pleading stage.

Raboczkay argues that Ramik's and Gorski's actions constitute adverse actions. Resp. at 19. However, as explained above, Ramik is not a part of this action, and Gorski's and Sollars's actions do not entitle Raboczkay to a name-clearing hearing. Denial of a hearing to which one is not entitled would not deter a person of ordinary firmness from continuing to engage in protected conduct. Therefore, the denial of the hearing cannot serve as an adverse action in this case.

9

As to the second investigation, Defendants are correct that it does not constitute an adverse action. Although Defendants' investigation is second in time, it is the first investigation into Raboczkay's alleged wrongdoing by his former employer. Employer investigations are not typically considered adverse actions for the purposes of First Amendment retaliation claims. See Peltier v. United States, 388 F.3d 984, 988 (6th Cir. 2004) (finding employee placed on paid leave pending a timely investigation is not an adverse action). Here, Raboczkay had already been terminated when Defendants initiated their investigation. Therefore, he did not lose pay or some other property interest in his position stemming from Defendants' investigation.

Defendants' investigation into Raboczkay's alleged wrongdoing, without more, is not an adverse action for the purposes of a First Amendment retaliation claim.

### C. City of Taylor

Raboczkay also named the City of Taylor in his Amended Complaint, presumably alleging municipal liability under Monell v. Department of Social Services of New York, 436 U.S. 658 (1978). However, because Sollars and Gorski did not violate Raboczkay's First and Fourteenth Amendment rights, the municipal liability claim also fails. Robertson v. Lucas, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under Monell without an underlying constitutional violation.").

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. 12) is granted. This case is dismissed with prejudice.

SO ORDERED.

Dated: April 15, 2020       s/Mark A. Goldsmith
   Detroit, Michigan      MARK A. GOLDSMITH
                                         United States District Judge